IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 14, 2004

## CLIFFORD WARD, JR. v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2001-A-378     J. Randall Wyatt, Jr., Judge**

_____

**No. M2003-00668-CCA-R3-PC - Filed February 6, 2004**

_____

The petitioner, Clifford Ward, Jr., appeals the Davidson County Criminal Court's denial of his petition for post-conviction relief from his guilty pleas to two counts of rape of a child, two counts of aggravated sexual battery, and effective twenty-five-year sentence. He contends that he received the ineffective assistance of counsel because his trial attorney failed to investigate his case. We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and JOHN EVERETT WILLIAMS, JJ., joined.

Matthew F. Mayo, Nashville, Tennessee, for the appellant, Clifford Ward, Jr.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Brian Keith Holmgren, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

This case relates to the petitioner's having sexual contact with his six-year-old daughter from November 1999 to November 2000. At the guilty plea hearing, the state presented the following factual account of the crimes: While the petitioner and his family were living in an apartment in Nashville, the petitioner forced the victim to perform fellatio on him multiple times and had "penis to vaginal contact" with the victim. In addition, the petitioner would bounce the victim up and down on his lap, causing him to become sexually aroused. Nasvhille Metropolitan Police Officers interviewed the petitioner twice, and he acknowledged that he had forced the victim to perform fellatio on him and had bounced her on his lap.

At the evidentiary hearing, the petitioner testified that he originally had been charged with two counts of rape of a child and twelve counts of aggravated sexual battery but pled guilty to the

rapes and only two counts of aggravated sexual battery. He said that he retained his trial attorney after his preliminary hearing and that he met with his attorney only three or four times at the courthouse and only once in jail. He said that his attorney went over the charges and possible penalties with him and that his attorney gave him some of the state's discovery. He said that his attorney asked him to look over the discovery materials but that they never discussed them. He acknowledged giving two audiotaped statements to the police and discussing the statements with his attorney.

The petitioner testified that he gave his attorney the names, addresses, and telephone numbers of witnesses but that his attorney never contacted them. He said that one or two of the witnesses were coworkers and that the others lived in his apartment complex. He said his attorney should have gotten his employment records. He said that he and his attorney discussed trying to suppress his audiotaped statements, that his attorney told him a motion to suppress the statements had been filed, and that no hearing on the motion was held. He said that at first, his attorney told him and his family that the state did not have any evidence against him and that he should go to trial. He said that later, his attorney told him he did not have a defense and advised him to plead guilty. He said that the state initially offered to let him plead guilty in exchange for a thirty-year sentence but that it later offered him a twenty-five-year sentence. He said his attorney told him that if he did not accept the state's offer, he may never get out of prison. He said he had wanted to go to trial but decided to accept the state's plea offer because his attorney was unprepared for trial. He said his attorney would not come to the jail to talk to him and would not return his telephone calls.

On cross-examination, the petitioner testified that he was forty-one years old, obtained his GED while in jail, and was not guilty. He said he did not hear much of what the trial court said during the guilty plea hearing because both of his hearing aids were broken. He said he told his attorney about his hearing aids not working but did not tell the trial court. He said that the victim was lying and that he felt threatened by the police during the interviews. He said that he never listened to his audiotaped statements but that he did not believe he told the police he had sex with the victim. He acknowledged that he was not under arrest when he gave the statements and that after the interviews, he was free to leave. He also acknowledged that he gave the police permission to search his apartment and that the police found "adult sexual things" during the search. He denied showing the sexual items to the victim or using them on her.

The petitioner testified that his attorney should have interviewed his apartment complex manager and his coworkers. He said that his coworkers would have testified that he worked fourteen to seventeen hours per day, six days per week and that he could not have committed the crimes because he was always working. He said his wife did not work, was always at home, and that he was never alone with the victim. He said his attorney never explained why his statements to the police could not be suppressed. Upon being questioned by the trial court, the petitioner stated that he looked over the guilty plea form but did not read all of it. He acknowledged signing the form.

The petitioner's trial attorney testified that he had been practicing law since 1995 and had worked as an assistant district attorney before going into private practice. He said that he had

represented several hundred criminal defendants and that he had represented three defendants who had been charged with crimes similar to the petitioner's crimes. He said that before accepting the petitioner's case, he talked with the petitioner twice. He said that after the petitioner retained him, he met with the petitioner about eight times and filed motions. He said that at first, he believed the state had a very weak case against the petitioner. He said that after he reviewed the state's discovery materials and the petitioner's audiotaped statements, he told the petitioner that the petitioner probably would be convicted and should consider pleading guilty. He said that the state lowered its offer from thirty years to twenty-five years and that about one week before trial, the petitioner began seriously considering a guilty plea. He said that a few days before trial, the petitioner agreed to plead guilty.

The petitioner's attorney testified that the petitioner was not under arrest when the petitioner gave two statements to the police and that the statements were highly incriminating. He said that he saw no legal basis for filing a motion to suppress the statements and that the statements corroborated some physical evidence in the case. He said the petitioner never told him at the guilty plea hearing that the petitioner could not hear and never expressed confusion about the guilty plea. He acknowledged that he went over the guilty plea form with the petitioner and that the petitioner appeared to understand it. He said he looked at the petitioner's time cards and talked with the petitioner's employer. He said that the petitioner's witnesses were going to testify that the petitioner worked many hours and that while it was clear the petitioner worked much of the time, no alibi defense existed.

On cross-examination, the attorney testified that the petitioner wanted an opportunity to get out of prison someday. He said that he did not file a motion for a bill of particulars and that he talked with the petitioner about raising an issue regarding the fresh complaint doctrine. He said that he reviewed case law on fresh complaint but concluded it was not a valid issue in the case. He said that he did not remember the victim's age and did not interview her but that he read Child Services' reports about the case. He said that although nothing indicated the victim was lying, the petitioner's family had a difficult time believing the victim's allegations. He said the petitioner told him that the victim may have been sexually abused by someone when the family lived in an apartment complex in Colorado. He said he and the petitioner talked about the petitioner taking the stand at trial to dispute the victim's allegations. He said that he did not believe the petitioner pled guilty because the petitioner thought he was unprepared for trial. He said that although he did not read the plea agreement form to the petitioner word for word, he explained every paragraph of the form to the petitioner.

The trial court held that the petitioner's attorney adequately investigated the case and discussed the case with the petitioner. It determined that the petitioner chose to plead guilty and that he understood his rights. The trial court noted that the guilty plea hearing transcript shows the petitioner "responded intelligently to each question asked of him by the Court, and appeared very attentive during the proceedings." It denied the petition for post-conviction relief.

The petitioner claims that he had no choice but to plead guilty because his attorney did not investigate his case adequately, did not interview witnesses, and failed to file a motion for a bill of particulars. He argues that if his attorney had done these things, "it would have possibly given the Petitioner a better opportunity to formulate an alibi defense and proceed to trial." The state argues that the petitioner received the effective assistance of counsel. We agree with the state.

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings fundamentally unfair. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72, 113 S. Ct. 838, 842-44 (1993). The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974), and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance. Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. See Hellard, 629 S.W.2d at 9; DeCoster, 487 F.2d at 1201.

The burden is on the petitioner to prove his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-210(f). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

The trial court obviously accredited the petitioner's trial attorney, who testified that he met with the petitioner at least eight times, obtained discovery, reviewed the petitioner's audiotaped statements, interviewed the petitioner's wife and employer, and could not establish an alibi defense. Although the petitioner claims that his attorney should have interviewed other potential witnesses, none of these witnesses testified at the evidentiary hearing. Without testimony from the witnesses, the petitioner cannot demonstrate that he was prejudiced by his attorney's failure to interview them. See Black v. State, 794 S.W.2d 753, 757 (Tenn. Crim. App. 1990). Regarding the attorney's failure

to file a motion for bill of particulars, the petitioner has presented no evidence that his attorney's failing to file the motion changed the outcome of his case. Thus, he is not entitled to relief.

Based upon the foregoing and the record as a whole, we affirm the judgment of the trial court.

                                              _____

                                              JOSEPH M. TIPTON, JUDGE